## THE STATE v. WILLIAM BROWN, alias SCOTTY.

The error which will justify the reversal of a judgment must be one which has, or may have, occasioned the prisoner some injury.

APPEAL from the First District Court of New Orleans, *Hunt*, J. *E. Abell*, for appellant. *T. J. Semmes*, Attorney General, for the State.

MERRICK, C. J. The prisoner has been convicted of the murder of Barney McGuire, and sentenced to suffer the penalty of death. After an unsuccessful motion for a new trial, the accused has appealed.

The record shows that the motion for a new trial was filed on the alleged ground, that the evidence disclosed a case of self-defence on the part of the accused, and also on the ground of the supposed error of the Judge in excluding certain testimony of the prisoner's witness from the jury. A bill of exception has made the ruling of the District Judge a part of the record, and we will proceed to consider the question raised by the same.

On the trial of the case before the jury, the prisoner placed a witness upon the stand and offered to prove by the same, that the deceased was a man of desperate and dangerous character, in order to show that at the time of the homicide the prisoner had reasonable grounds to apprehend the loss of his life, or great bodily harm.

And in order to lay the basis for the reception of this testimony, the prisoner had, as appears by the bill of exceptions, introduced a witness who testified that two or three months previous to the homicide, the accused, who was at Louisville, Ky., said he would kill Brown, and that he would follow him to New Orleans and have his life, and that witness informed Brown of it, who made light of it; that the difficulty was about an election in Louisville.

Another witness, it was admitted, would prove that the day before the homicide, the deceased, in a clandestine manner, struck the prisoner on the head with a stick of wood and felled him to the ground, causing the blood to flow freely; and then threatened to take the life of the prisoner.

Another witness testified, that the deceased, about three quarters of an hour before the homicide, desired to borrow a large bowie-knife, which was refused him.

And another witness, a man of bad character and a reputed thief, who had been with the prisoner in the Parish prison, testified that he was on the steamboat Atlantic when the homicide occurred, and saw the deceased came out of a room and saw the prisoner go towards the stern of

the boat, and that the deceased, applying an opprobrious epithet to the prisoner, said: "I have got you where I want you," and at the same time raising his hand as if to draw a weapon; that he did not see any weapon with prisoner; that he then left to avoid seeing (what he called), the "fuss" which he anticipated, and when he got on the staging of the boat heard the pistol fire, and in a few minutes afterwards saw the prisoner run across the levee.

The counsel for the prisoner in the lower court appears to have recognized the rule laid down in the case of *The State* v. *Chandler*, 5 An. 489, that testimony in general, that the deceased was a quarrelsome man, of violent temper and dangerous when excited, is inadmissible on a trial under an indictment for murder. But he seems to have proceeded upon the supposition that there is an exception to this rule where the deceased was the assailant, and that in such case the character and disposition of the deceased, as well as his physical strength and the manner in which he was armed, were proper subjects of inquiry before the jury in order to determine whether there were reasonable grounds for the defendant to conclude that a necessity of taking the life of the deceased existed in order to save his own, or at least to save himself from great bodily harm.

Whether our law recognizes this exception to the general rule, and if it does, whether the District Judge can inquire into the truth of the facts testified to by the witnesses as the basis for the introduction of the proof, and receive or reject the testimony as he shall believe or disbelieve them, are questions which we do not feel called upon to decide in this case; for it also appears by the same bill of exceptions, that after the State had closed its rebutting testimony, the objection to the evidence of the character of the deceased was withdrawn by the Attorney General, and the prisoner was permitted to offer the testimony if he thought proper; but he declined so to do, as stated by his counsel, because the court had pronounced it illegal and inadmissible.

It has often been said by the Court, that the error which will justify the reversal of a judgment, must be one which has or may have occasioned the prisoner some injury. It cannot be said that any injury was occasioned him by the ruling of the District Judge in the present case, because the prisoner himself declined to introduce the testimony: *volenti non fit injuria.* Neither can he say that such interlocutory order of the Judge on the question of the admissibility of the testimony would have prejudiced him on the trial; for *non constat*, the Attorney General might have conceded the question of law, and the Judge perhaps might not have refused on the trial, after the testimony had been received, to charge on this point as required by the accused. See *State* v. *Kennedy*, 11 An. 480.

Of the facts involved in the motion for a new trial, we are not permitted to inquire. The District Judge was of the opinion that the testimony proved, that twenty-four hours after the alleged provocation, the prisoner searched out the deceased to kill him and did kill him. The law makes the verdict of the jury and finding of the District Judge on this branch of the case final.

We cannot, therefore, say that any error has intervened in the proceedings and trial of this cause to the prejudice of the prisoner. See Wheaton Crim. Law, 234 and 395, ed. 1852; 2 Greenleaf's Ev. No. 27.

STATE
*v.*
BROWN.
It is, therefore, considered by this Court, that the judgment of the lower court be affirmed, with costs.

VOORHIES, J., absent.